IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RUTH D. MCNALLY,                     :
                                     :
                  Plaintiff,         :
                                     :
        v.                           :        CIVIL ACTION
                                     :
                                     :        NO.  20-703
                                     :
ANDREW SAUL,                         :
ACTING COMMISSIONER OF               :
SOCIAL SECURITY,                     :
                                     :
                  Defendant.         :

## MEMORANDUM OPINION

Ruth D. McNally ("McNally" or "Plaintiff") seeks review, pursuant to 42 U.S.C.

§ 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying her

claims for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act

and for Supplemental Security Income ("SSI") pursuant to Title XVI of the Act.[1]  For the

reasons that follow, McNally's Request for Review will be denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

McNally was born on July 18, 1969.  R. at 381.[2]  She completed two years of college, id.

at 365, and is able to speak, read, and understand English, id. at 363.  Her past relevant work

experience was as a dispatcher, cashier, title and tag worker, and container inspector.  Id. at 409.

McNally applied for DIB and SSI benefits on March 6, 2017, id. at 280-91, alleging that she

became disabled on May 1, 2015, id. at 280, 282, due to: major depressive disorder, bipolar

---

[1]     In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the
undersigned United States Magistrate Judge conduct proceedings in this case, including the entry
of final judgment.  See Doc. Nos. 2, 10.

[2]     Citations to the administrative record will be indicated by "R." followed by the page number.

disorder, mild cognitive impairment with memory loss, intractable chronic migraine without aura, chronic pain syndrome, and severe pain attacks, id. at 364.  Her applications were initially denied on August 9, 2017.  Id. at 200-09.  McNally then filed a written request for a hearing on September 26, 2017, id. at 216-17, and an Administrative Law Judge ("ALJ") held a hearing on her claims on February 1, 2019, id. at 107-57.  On June 26, 2019, the ALJ issued an opinion denying McNally's claims.  Id. at 11-38.  McNally filed an appeal with the Appeals Council, which the Appeals Council denied on December 18, 2019, thereby affirming the decision of the ALJ as the final decision of the Commissioner.  Id. at 1-6.  McNally then commenced this action in federal court.

## II.    <u>THE ALJ'S DECISION</u>

In her decision, the ALJ found that McNally suffered from the severe impairments of: cerebrovascular small vessel disease; cervical degenerative disc disease, spondylosis, and radiculopathy; lumbosacral radiculopathy; a history of obesity; intractable chronic migraines without aura; a mild cognitive impairment; a major depressive disorder; generalized anxiety disorder; dissociative identity disorder; borderline personality disorder; and attention deficit hyperactivity disorder.  Id. at 17.  The ALJ determined that neither McNally's individual impairments, nor the combination of her impairments, met or medically equaled a listed impairment.  Id. at 17-20.  The ALJ found that, during the relevant period, McNally had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, crouch, or crawl; should avoid concentrated exposure to extreme cold and hazards; would be able to perform simple tasks and make simple decisions; can follow short, simple instructions; can perform 1-2 step functions on a consistent basis; and she can perform only low stress jobs defined as involving only occasional decision[-]making.

Id. at 20.  Based on this RFC determination, and relying on the vocational expert ("VE") who appeared at the hearing, the ALJ found that there were jobs that existed in significant numbers in the national economy that McNally could perform, such as "Office Helper," "Marker," or "Bagger."  Id. at 30-31.  Accordingly, the ALJ concluded that McNally was not disabled.  Id. at 31-32.

## III.    MCNALLY'S REQUEST FOR REVIEW

In her Request for Review, McNally contends that: (1) she meets or equals more than one category of impairments; (2) she does not retain the RFC to perform other substantial gainful employment; and (3) she could have been found to be disabled at a later onset date.

## IV.    SOCIAL SECURITY STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence."  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review.  See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 1382c(a)(3)(A); accord id. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920 (references to other regulations omitted).

## V.    DISCUSSION

### A.    The ALJ's Step-Three Finding is Supported by Substantial Evidence

McNally argues that the ALJ erred in finding that neither her individual impairments, nor the combination of her impairments, met or medically equaled a listed impairment.  Pl.'s Br. (Doc. No. 13) at 4-6.  Specifically, she contends that she met or equaled the following listings: (1) 1.04 for disorders of the spine; (2) 12.02 for neurocognitive disorders; (3) 12.04 for depressive, bipolar and related disorders; and (4) 12.06 for anxiety and obsessive-compulsive disorders.  Id.  For the reasons discussed below, McNally's claim lacks merit.

At step three of the sequential analysis, the ALJ must determine whether a severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(4)(iii), 416.925, 416.926.  If the ALJ determines that a claimant's impairment meets or medically equals a listing, then the claimant is considered disabled, without considering the claimant's age, education or work experience.  Id. §§ 404.1520(d), 416.920(d).  "The Listing of Impairments (the listings) . . . . describes for each of the major body systems impairments that the [Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  Id. §§ 404.1525(a), 416.925(a).  In determining whether a claimant meets a listing, "the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  If the claimant's impairment matches or is 'equal' to one of the listed impairments, he [or she] qualifies for benefits without further inquiry."  Sullivan v. Zebley, 493 U.S. 521, 525 (1990) (citation omitted).  As the United States Supreme Court has explained:

> The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." . . . The reason for this difference between the listings' level of severity and the statutory standard [for disability] is that . . . the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his [or her] impairment matches or is equivalent to a listed impairment, he [or she] is presumed unable to work and is awarded benefits without a determination whether he [or she] actually can perform his [or her] own prior work or other work.

Id. at 532 (emphasis in original) (internal citations omitted).  If an impairment does not meet the criteria of a listing, it can medically equal the criteria of the listing.  20 C.F.R. §§ 404.1525, 416.925.  An impairment or combination of impairments "medically equals" a listing "if it is at least equal in severity and duration to the criteria of any listed impairment."  Id. §§ 404.1526, 416.926.

Claimants bear the burden of establishing through medical evidence that their condition meets or equals all the requirements of a listing.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 n.2 (3d Cir. 2000).  Because a finding that a claimant meets or equals a listing ends the analysis without further examination of the claimant's individual functional limitations, "[t]he Commissioner applies a heightened evidentiary standard for presumptive disability cases under the listings than for cases that proceed to other steps in the sequential evaluation process." Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 710 (6th Cir. 2013).  For this reason, the listings are "strictly construed against claimants."  Lee v. Astrue, No. 06-5167, 2007 WL 1101281, at *4 (E.D. Pa. Apr. 12, 2007); accord Eckenrode v. Colvin, No. 2:13-cv-231, 2014 WL 819955, at *8 (W.D. Pa. Mar. 3, 2014); Horne v. Comm'r of Soc. Sec., No. 2:13-cv-00226, 2014 WL 585927, at *6 (W.D. Pa. Feb. 14, 2014).

1.      **The ALJ's Finding that McNally's Cervical Degenerative Disc Disease
and Associated Impairments Did Not Meet Listing 1.04 is Supported
by Substantial Evidence**

McNally contends that the ALJ erred in finding that she did not meet or equal Listing

1.04 for disorders of the spine.  Pl.'s Br. at 5.  To meet the requirements of Listing 1.04, a

claimant must have a "[d]isorder[] of the spine … resulting in compromise of a nerve root … or

the spinal cord" with at least one of the following:

> A. Evidence of nerve[-]root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy
> with associated muscle weakness or muscle weakness) accompanied by
> sensory or reflex loss and, if there is involvement of the lower back, positive
> straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report
> of tissue biopsy, or by appropriate medically acceptable imaging,
> manifested by severe burning or painful dysesthesia, resulting in the need
> for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by
> findings on appropriate medically acceptable imaging, manifested by
> chronic nonradicular pain and weakness, and resulting in inability to
> ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1 §1.04.  Here, the ALJ determined that McNally did not meet

these criteria because "[t]he medical evidence fail[ed] to show that [McNally] suffer[ed] from

nerve[-]root compression, spinal arachnoiditis, or lumbar spinal stenosis with

pseudoclaudication."  R. at 18.  This finding was amply supported by the medical evidence.

In evaluating McNally's spinal impairments, the ALJ explained that "[m]ost of the

treatment notes during the relevant period d[id] not involve complaints of neck or low back pain,

and instead involve[d] periodic, common illnesses, such as bronchitis, a sore throat, and

diarrhea."  Id. at 21; see e.g., id. at 591-624.  Instead, "multiple physical exams show t[hat] [McNally] maintain[ed] normal strength in her upper and lower extremities; her sensation [was] intact, she usually ha[d] a normal, steady gait; and she exhibit[ed] no abnormal movements or tremor."  Id. at 22; see e.g., id. at 664-65, 670-71, 681-82, 708-09, 726, 729, 731, 738-57, 765. To the extent that McNally was treated for neck and low back pain, her medical records indicated that her spinal complaints and ability to function significantly improved when she was prescribed Opana and MSIR.  Id. at 21, 855.  Moreover, no treating or examining physician opined that McNally suffered from or displayed the requisite combination of symptoms associated with the conditions in Listing 1.04.  Furthermore, the record contained no operative note, pathology report of a tissue biopsy, or appropriate medically acceptable imaging supporting the conclusion that McNally suffered from nerve-root compression, spinal arachnoiditis, or lumbar spinal stenosis with pseudoclaudication.  Accordingly, as the foregoing makes clear, the ALJ's determination that McNally did not meet the requirements of Listing 1.04 was supported by substantial evidence.

> **2.**     **The ALJ's Finding that McNally's Mental Impairments, Considered Singly and in Combination, Did Not Meet Listings 12.02, 12.04, and 12.06 is Supported by Substantial Evidence**

McNally also alleges that the ALJ erred in finding that neither her individual mental impairments, nor the combination of those impairments, met or medically equaled Listings 12.02, 12.04, and 12.06.  Pl.'s Br. at 4-5.  To meet the requirements of Listings 12.02, 12.04, and 12.06, a claimant must satisfy the "A" criteria of those listings and either the "B" criteria or the "C" criteria.  20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.02, 12.04, 12.06.  The B criteria for Listings 12.02, 12.04, 12.06 are identical and require a finding of an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand,

remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself.  Id. §§ 12.02(B), 12.04(B), 12.06(B).  An extreme limitation may be found when a claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis."  Id. § 12.00(F)(2)(e).  A marked limitation may be found when a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."  Id. § 12.00(F)(2)(d).  The C criteria for Listings 12.02, 12.04, and 12.06 are also identical and require the claimant to have a "a medically documented history of the disorder over a period of at least 2 years" and evidence of both of the following:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

Id. §§ 12.02(C), 12.04(C), 12.06(C) (references to other regulations omitted).  "'Marginal adjustment' means that [a claimant's] adaption to the requirements of daily life is fragile."  Id. at § 12.00(G)(2)(c).  As explained in the applicable regulations:

> We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

Id.

In this case, the ALJ determined that McNally did not meet the B or C criteria of Listings 12.02, 12.04, and 12.06.  R. at 18-19.  With respect to the B criteria, the ALJ found that McNally had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself.  Id.  These findings were supported by substantial evidence.

With respect to understanding, remembering, or applying information, the ALJ noted that although McNally "reported having some confusion at times, difficulty understanding tasks, and . . . need[ing] assistance and reminders for basic activities of daily living[,]" she was "usually only impaired in this area when she ha[d] been overusing prescribed medications."  Id. at 18; see e.g., id. at 628, 632, 644, 804.  For example, a treatment note from Redco Group Behavioral Health stated that McNally "lied about the other medication that she [was] getting from other providers. . . . [and] she [was] going around shopping for addictive and controlled medication. [N]o wonder [she] couldn't open her eyes all session."  Id. at 628.  Likewise, during an emergency visit to Pocono Medical Center, McNally was "so intoxicated on meds [that] she [was] a danger to [her]self and others" and was "in and out of conciousness [sic] and slurring her speech due to medication."  Id. at 644.  As the ALJ noted, however, McNally did not exhibit these symptoms when she complied with medical advice and took her prescription medication as recommended by her medical providers.  Id. at 629-37, 738-39, 741, 743, 745, 749, 751, 753.  Thus, the record amply supported the ALJ's finding that McNally's limitations in understanding, remembering, or applying information were mild as opposed to marked limitations.

With regard to interacting with others, McNally reported that "she spen[t] most of her time alone; she [was] afraid to be around people; she d[id] not use public transportation; and she

ha[d] difficulty getting along with people." <u>Id.</u> at 18. The ALJ determined, however, that

McNally's medical records tended to contradict her claims. <u>Id.</u> For instance, McNally resided

with her daughter and boyfriend and never reported fighting within her household. <u>Id.</u> In fact,

she reported that they were her support system, <u>id.</u> at 785, and that she was "always there for her

daughter," <u>id.</u> at 784. Moreover, her medical provider never indicated that she was

inappropriate or disrespectful during appointments. <u>Id.</u> at 18. Rather, she was described as

"cooperative," <u>id.</u> at 627, with "good eye contact," <u>id.</u> at 629, 741, as well as "pleasant and

talkative," <u>id.</u> at 731. In addition, McNally's medical providers consistently described her as

appropriately dressed and groomed, <u>id.</u> at 597, 627, 799, 805, with "appropriate mood and

affect" and "clear and coherent" speech, <u>id.</u> at 597, 627, 709. Finally, as the ALJ noted, McNally

worked throughout the relevant period and "[t]here [was] no indication [that] she was incapable

of getting along with her co-workers or supervisors." <u>Id.</u> at 18-19. Accordingly, the ALJ's

determination that McNally suffered from moderate, as opposed to marked limitations, in her

ability to interact with others, was supported by substantial evidence in the record.

  With respect to concentrating, persisting, or maintaining pace, the ALJ acknowledged

that McNally "reported bouts of confusion due to a cognitive disorder, as well as persistent

symptoms associated with her depression, anxiety, and the presence of her alternate personality,

Delores." <u>Id.</u> at 19. Yet again, these symptoms usually occurred when McNally misused and/or

overused her prescribed medications. <u>Id.</u>; <u>see, e.g.</u>, <u>id.</u> at 628-37, 644, 738-39, 741, 743, 745,

749, 751, 753, 804. For example, during her consultative psychological exam it was noted that

she "appeared to be under the influence … [s]he repeatedly kept falling asleep[,] [s]he slurred

her words[,] [h]er eyes were rolled back into her head, and she appeared confused." <u>Id.</u> at 804.

Moreover, as the ALJ noted, "many of her providers remained unaware of [McNally's] alleged

alter [Dolores] and the reports of confusion." Id. at 19; compare id. at 812 (reporting her alleged alter, Delores, to Pinebrook Family Services), with id. at 738-55 (neglecting to report her alleged alter, Delores, to PMCPA Family Practice). Consequently, the record supported the ALJ's determination that McNally had no more than moderate limitations in concentrating, persisting, or maintaining pace.

Finally, with regard to adapting and managing oneself, the ALJ recognized that McNally "reported [a] need for her boyfriend or others to help her due to her physical and mental symptoms," but found that the evidence did not support a finding of marked or extreme limitations. Id. at 19. For example, the State agency psychological consultant noted that McNally was "able to dress, bathe, and groom herself seven times a week, cook or prepare mostly simple meals seven times a week, clean two times a week, laundry two times a week, and shop[] two times a month." Id. at 801. There was also no evidence that she required special accommodations to perform her past work. Id. at 19, 119-20, 314. Insofar as McNally claimed that her boyfriend solely managed the finances, id. at 19, her records showed that she stressed over her household's lack of financial resources, suggesting that she was involved in aspects of financial management, id. at 798. Moreover, McNally's symptoms did not make it difficult for her to make her own medical decisions or understand her diagnoses, plan of care, or treatment. Id. at 19. Therefore, the ALJ's conclusion that McNally experienced moderate limitations in adapting and managing herself was supported by substantial evidence.

With respect to the C criteria, the ALJ acknowledged that "[t]he evidence presented … indicate[d] that [McNally] has a depressive disorder, bipolar disorder, or a related disorder[,] [and that] [t]here [was] a history of medical treatment, mental health therapy, and psychosocial support." Id. at 19. The ALJ explained, however, that "there [was] no indication t[hat]

12

[McNally] require[d] a highly structured setting. . . . [and that] the evidence d[id] not support finding that [McNally] ha[d] marginal adjustment abilities such that she ha[d] only a minimal capacity to adapt to changes in her environment or to demands that [were] not already part of her life." Id.  Indeed, the record showed that any exacerbation of her symptoms or deterioration in her function correlated with her misuse and/or overuse of prescription medication.  Id. at 628-37, 644, 738-39, 741, 743, 745, 749, 751, 753, 804.  Additionally, as the ALJ pointed out, McNally was able to work throughout the relevant period without requiring any special assistance and there was no indication that she required any hospitalizations.  Id. at 19.  Accordingly, the ALJ's finding that McNally's impairments did not meet or medically equal the C criteria of Listings 12.02, 12.04, and 12.06 was supported by substantial evidence.

### B.    The ALJ's Step Five Finding is Supported by Substantial Evidence

McNally maintains that the ALJ erred in finding that, given her age, education, work experience, and "illnesses and ailments," she retained the RFC to perform other substantial gainful employment.  Pl.'s Br. at 6-8.  Specifically, she claims that the ALJ should have given more weight to the opinion of her vocational consultant, John Topalanchik, M.S. ("Topalanchik"), and that the ALJ's hypothetical question to the VE failed to include all her limitations.  Id.  These contentions are unavailing.

#### 1.    Substantial Evidence Supported the ALJ's Determination That Topalanchik's Opinion Was Not Entitled to Any Weight

McNally claims that the ALJ abused her discretion in affording Topalanchik's report no weight.  Id. at 7.  She contends that the ALJ was required to give this report "more weight" because Topalanchik was an "extremely knowledgeable expert" with experience in disability evaluations.  Id.  In the alternative, McNally argues that, at the very least, the ALJ should have

allowed the VE to consider Topalanchik's report.  Id.  As discussed below, these contentions lack merit.

Topalanchik authored a Vocational Report dated January 25, 2019, R. at 438-41, in which he observed that McNally's "combination of mental and physical impairments create[d] marked exertional and non-exertional limitations that essentially l[eft] her with no residual functional capacity to perform work[-]related functions in the competitive work environment." Id. at 440.  He further opined that "[t]he combinations of Ms. McNally's exertional and non-exertional limitations preclude[d] the performance of significant gainful activity in the function by function analysis of SSR-96-9P considering [that] Ms. McNally [was] unable to perform a full range of even sedentary work."  Id. at 441.  Ultimately, Topalanchik concluded that McNally's "symptoms complex prevent[ed] the performance of any substantial gainful activity appropriately, effectively, independently or on a sustained basis."  Id.  The ALJ determined that Topalanchik's report should be given "no weight" because it "provide[d] little information about [McNally's] actual work history, contain[ed] medical opinions from a non-medical source, and offer[ed] an opinion on an issue reserved to the Commissioner."  Id. at 29-30.  This decision was supported by substantial evidence.

Topalanchik began his report by outlining McNally's educational history, IQ, and employment history, including her "failed" work attempts.  Id. at 29, 438.  With regard to McNally's work history, the ALJ explained that Topalanchik neglected to mention that McNally "ha[d] stated various reasons for the short-term nature of these jobs."  Id. at 29.  For example, McNally reported to Dr. Sharon Cline of PMCPA Family Practice that her most recent job did not work out because the position was terminated, so she was let go from the company.  Id. at 29, 746.  This internal inconsistency and lack of explanation for McNally's "failed" work attempts

sufficiently supported the ALJ's decision to reject Topalanchik's opinion.  Cf. Plummer v. Apfel,

186 F.3d 422, 429 (3d Cir. 1999) (citing Newhouse, 753 F.2d at 286) (noting that an ALJ "may

afford a treating physician's opinion more or less weight depending upon the extent to which

supporting explanations are provided").

In his report, Topalanchik also offered several medical opinions about McNally's

exertional and nonexertional limitations.  R. at 29, 439-40.  For instance, Topalanchik opined

that McNally had marked limitations in her ability to understand, remember and apply

information, as well as in her ability to sit, stand, and walk six hours in an eight-hour day.  Id. at

440-41.  He also stated that her symptoms complex was consistent with the criteria of Listings

1.04, 12.02, 12.04, and 12.06.  Id. at 440.  The ALJ, however, determined that such opinions

were inappropriate because, as an employment counselor, certified rehabilitation specialist, and

certified vocational evaluation specialist, id. at 29, 444, Topalanchik was not an acceptable

medical source under the appliable regulations.  See 20 C.F.R. §§ 404.1502(a), 416.902(a).

Thus, the ALJ was entitled to afford Topalanchik's opinion no weight.  Cf. Rios v. Barnhart, 57

F. App'x 99, 101 n.2 (3d Cir. 2003) (quoting Hartranft, 181 F.3d at 361) (recognizing "that 'a

chiropractor's opinion is not "an acceptable medical source" entitled to controlling weight'" and

affording chiropractor's opinion "little weight" because it was inconsistent with the record and

not supported by clinical medical evidence).

Topalanchik concluded his report by opining that McNally's condition "prevent[ed] the

performance of any substantial gainful activity, effectively, independently or on a sustained

basis."  R. at 441.  This opinion, as explained by the ALJ, "in essence, [was] an opinion that

[McNally] [was] disabled."  Id. at 29.  As a result, the ALJ was under no obligation to give

Topalanchik's opinion special weight because "[a] finding of disability is an issue reserved to the

Commissioner." Id.; see 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927 (d)(1), (3) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

Insofar as McNally argues that the ALJ should have allowed the VE to consider Topalanchik's report, Pl.'s Br. at 7, her claim is meritless. An ALJ is obligated to "provide the VE with copies of all evidence relating to the claimant's vocational history" both before the hearing and, if new vocational evidence is received at the hearing, before the VE's testimony. Hearings, Appeals and Litigation Law Manual ("HALLEX") 1-2-5-48, 1994 WL 637379 (June 16, 2016). Topalanchik's report, however, was not evidence relating to McNally's vocational history. Rather, it was an improper medical source statement and disability opinion disguised as a vocational consultant analysis. R. at 29. Thus, the ALJ was not required to provide the VE with this report.

### 2. McNally's Challenge to the Hypothetical the ALJ Posed to the VE is Meritless

McNally contends that the ALJ's hypothetical to the VE failed to include all of her limitations. Pl.'s Br. at 7-8. Specifically, she argues that the hypothetical should have contained the limitations that her counsel included in his hypothetical to the VE on cross-examination. R. at 8, 144-45. This claim lacks substance.

"A hypothetical question posed to a vocational expert 'must reflect *all* of a claimant's impairments.'" Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (emphasis in original) (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)).  However, an ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant.  Instead . . . the hypotheticals posed must 'accurately portray' the claimant's impairments and [] the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" Rutherford, 399 F.3d at 554 (emphasis in original).  Simply put, any hypothetical posed to the VE need only include "claimant's *credibly established limitations*." Id. (emphasis in original) (citing Plummer, 186 F.3d at 431).

Here, the ALJ found that McNally's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," R. at 20, and thus, she did not include them in her hypothetical to the VE.  Id. at 141-42.  For example, the ALJ pointed out that many of the symptoms associated with McNally's mental impairments were related to her overuse and/or misuse of prescribed medication.  Id. at 21-22; see e.g., id. at 628-37, 644, 738-39, 741, 743, 745, 749, 751, 753, 804. The ALJ also credited the opinion of State agency psychological consultant, Anthony Galdieri, Ph.D., that McNally was limited to simple tasks and low stress jobs, as well as to making simple decisions, following short and simple instructions, and performing one to two step functions on a consistent basis.  Id. at 28, 172-74, 192-94.  With respect to McNally's exertional limitations, the ALJ determined that her chronic pain complaints were inconsistent "with the physical exams in the record [and] [her] alleged preference to avoid pain management therapies despite their availability."  Id. at 22; see e.g., id. at 596-623; 662-98; 707-35; 738-57.  In reaching this decision, the ALJ gave substantial weight to the findings of State agency medical consultant, Dr.

Crescenzo Calise, regarding McNally's exertional limitations.  Id. at 28; 158-97.  Moreover, the ALJ noted that McNally "pursued no physical therapy, occupational therapy, injections, or anything beyond a brief period of pain medication treatment via a pain clinic. . . . [and that] no surgical evaluation or intervention ha[d] been recommended."  Id. at 28.  Accordingly, the ALJ was not required to include McNally's claimed limitations in her hypothetical to the VE and thus, McNally's arguments to the contrary must fail.[3]

### C.     This Court May Not Consider McNally's Claim That She Could Have Been Found to be Disabled at a Later Onset Date

McNally's final claim is that the ALJ could have found her to be disabled at a later onset date.  Pl.'s Br. at 9.  In support of this claim, McNally presented new evidence to the Appeals Council in the form of a letter from the U.S. Department of Education ("DE Letter"), which discharged her federal student loans because it found that she was totally and permanently disabled as of July 2, 2018.  R. at 45.  This claim is meritless.

It is well established that evidence that was not before the ALJ cannot be considered by a district court in its determination of whether or not the ALJ's decision was supported by substantial evidence, even if it was submitted to the Appeals Council.  See Matthews v. Apfel, 239 F.3d 589, 593-94 (3d Cir. 2001).  The only evidence that may be considered in assessing whether substantial evidence supports the ALJ's decision is the administrative record at the time of the ALJ's decision.  Id. at 593.  The district court may, however, remand the case to the Commissioner to consider any new evidence presented to the Appeals Council or otherwise, "but

---

[3]     In her brief, McNally argues that the VE should have been allowed to review the medical records that her counsel submitted shortly before the administrative hearing.  Pl.'s Br. at 10.  As discussed supra in Section III(B)(1), the ALJ need only "provide the VE with copies of all evidence relating to the claimant's vocational history."  HALLEX 1-2-5-48, 1994 WL 637379.  Because the additional medical records did not pertain to McNally's vocational history, R. at 39-106, the ALJ was under no obligation to provide them to the VE.

only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." Id. (citations omitted); see 42 U.S.C. § 405(g).  All three requirements must be satisfied to warrant remand.  Matthews, 239 F.3d at 594.

McNally falls drastically short of meeting the new, material, and good cause requirements.  As an initial matter, the DE Letter was not "new."  Evidence is "new" if it is "not merely cumulative of what is already in the record," Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984) (citations omitted), and if it was "not in existence or available to the claimant at the time of the administrative proceeding," Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990).  Here, the DE Letter was dated July 2, 2018, R. at 45—nearly seven months prior to the hearing, which took place on February 1, 2019, id. at 107.  Accordingly, the DE Letter was not "new" because it existed and was available to McNally at the time of the administrative proceeding.  See Sullivan, 496 U.S. at 626.

Even if this evidence was considered to be "new," it was not "material."  Evidence is "material" if there is a "reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination."  Szubak, 745 F.2d at 833 (citations omitted).  No such possibility existed in this case.  As explained in the applicable agency regulations:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers— make disability . . . decisions for their own programs using their own rules.  Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules. Therefore, in claims filed on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled . . . . However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim . . . .

20 C.F.R. §§ 404.1504, 416.904 (reference to other regulations omitted).  As an "other governmental agency," the Department of Education's disability decision would not have been binding on the ALJ.  Moreover, the ALJ would have been under no obligation to analyze the Department of Education's decision because McNally filed her claim after March 27, 2017.  As a result, there was no possibility that the DE Letter would have changed the outcome of the Commissioner's decision, and thus this evidence is not "material."  See Szubak, 745 F.2d at 833.

Even assuming the newness and materiality of the letter, McNally fails to show that she had "good cause" for why this letter—which was sent to her seven months before the administrative hearing, R. at 45, 107—was not initially presented to the ALJ.  There was no mention of the DE Letter at the hearing, and McNally provides no explanation as to why she did not present this evidence.  Thus, McNally has not demonstrated good cause for failing to obtain this evidence prior to the ALJ issuing her decision.  See, e.g., Simonson v. Berryhill, No. 16-0631, 2017 WL 5632691, at *4 (M.D. Pa. Nov. 22, 2017) (holding that "it is a well-established principle that mere failure to obtain evidence before the ALJ made a determination when it could have been obtained does not amount to 'good cause'") (citations omitted); see also Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 472 (3d Cir. 2005) (holding that remand was not warranted because the plaintiff "had not provided any explanation for her failure to acquire this additional medical information prior to her hearing").  Consequently, this Court will not consider the DE Letter and remand to the Commissioner for consideration of this evidence is not warranted.[4]

---

[4]    McNally briefly argues that the ALJ should have rescheduled the hearing because her file was unavailable for review before the proceeding, placing her and her counsel "at a distinct disadvantage going into the hearing."  Pl.'s Br. at 3, 10.  This cursory argument provides no basis for relief because the record is devoid of any evidence to support this claim.

**VI.** __CONCLUSION__

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence.  Accordingly, Plaintiff's Request for Review will be denied and dismissed.  An appropriate order follows.

Dated: October 29, 2020

BY THE COURT:


*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE